UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT HARRIS,

                Plaintiff,

-against-

WESTCHESTER COUNTY MEDICAL
CENTER, DR. MCGILL, WESTCHESTER
COUNTY DEPARTMENT OF CORRECTIONS,
SUPERINTENDENT ROCCO POZZI, NP –
MARIA TAYLOR and PA – NORRIS
NOSWORTHY,

                Defendants.

08 Civ. 1128 (RJH)

**MEMORANDUM OPINION AND ORDER**

---

Richard J. Holwell, District Judge:

    Plaintiff *pro se* Robert Harris, currently incarcerated at Oneida Correctional Facility, commenced this action on February 4, 2008, alleging deliberate indifference to his medical needs in violation of 42 U.S.C. § 1983.  Now before the Court is defendants' motion to dismiss.  For the reasons that follow, that motion is GRANTED.

## BACKGROUND

    For the purposes of this motion, the following facts are taken as true.

    On May 15, 2007, Harris injured his left pinky finger while playing basketball.  (Third Amended Complaint ("Compl.") at unnumbered pg. 4.)  He was seen that day by the medical staff at Valhalla Correctional Facility ("Valhalla"), where he was then incarcerated, given ibuprofen, and returned to his cell.  (Typewritten Attachment to Compl. ("Compl. Attach.") at

1

unnumbered pg. 1.) Every night, Harris was given ibuprofen until May 22, 2007, when he was given an x-ray examination. (*Id.*) Harris alleges that he was in "constant and unbated [sic] pain" during that time. (*Id.*)

On May 22, 2007, Nurse Practitioner Maria Taylor took x-rays of Harris's hand, which showed no broken bones. (*Id.*) She then gave Harris ibuprofen despite his protests that ibuprofen left him in pain. (*Id.*) A day or two later, Harris requested stronger medication, but Taylor denied his request. (*Id.*)

On May 25, 2007, Harris underwent another x-ray exam, and Taylor told him that he had a severe dislocation and torn ligaments in his left pinky finger. (*Id.*) Harris again requested stronger medication, but Taylor denied the request. (*Id.*)

About two months later, Harris was taken to Westchester County Medical Center, where Dr. McGill performed surgery on his left pinky. (*Id.* at 3.) In doing so, McGill inserted a pin in Harris's pinky without informing Harris that he would do so. (*Id.* at 3, 4.) Harris alleges that as a consequence, his finger is permanently bent, and he cannot straighten it out. (*Id.* at 3.) Harris was returned to Valhalla, seen at the infirmary, was sent back to general population "even though [he] was heavily sedated, groggy, and in severe pain." (*Id.*) Harris requested to stay overnight in the infirmary, but that request was denied. (*Id.*) His placement in general population was in the top tier, meaning that he "had to walk down the stairs to get [his] food," and was "bumped into by other inmates which caused [him] severe pain in his left pinky." (*Id.*) When it was time to receive his pain medication, Physician Assistant Norris Nosworthy gave him Tylenol "instead of the Vicodin that Dr. McGill prescribed." (*Id.*)

Harris's pinky was bandaged and tied to his ring finger. (*Id.* at 3, 4.) Harris was told that the bandages would be on for six to eight weeks, but they were on for twelve weeks. (*Id.* at 4.) His ring finger also became stiff during this time. (*Id.*)

The bandages were removed on October 24, 2007, and two weeks later Harris went to physical therapy. (*Id.*) He attended physical therapy at Valhalla two or three times, where the physical therapist informed him that he "should be able to get [his] ring finger back but [his] left pinky will never be the same" and that "form [sic] the looks of your pinky the surgery did'nt [sic] go well." (*Id.*) On February 16, 2008, Harris was transferred to Elmira Correctional Facility ("Elmira"). (*Id.*) While incarcerated there, he underwent physical therapy for about two months at Five Points Correctional Facility, since Elmira did not have physical therapy. (*Id.* at 5.) Harris's complaint states that he "still cannot bend [his] left pinky or ring finger as of today." (*Id.*)

Harris commenced this action on February 4, 2008. By order dated that same day, Judge Kimba M. Wood directed Harris to file an amended complaint within sixty days of the order addressing certain deficiencies in the complaint and advised Harris that failure to do so would result in dismissal. (ECF No. 3.) Specifically, Judge Wood found that Harris's allegations in his original complaint, namely that the initial x-rays showed no broken bones, that a subsequent x-ray showed severe dislocation, and that surgery was not performed until some months later failed to show deliberate indifference. (*Id.* at 3.) Harris did not timely file an amended complaint, and the complaint was dismissed without prejudice on April 11, 2008. (ECF No. 4.) On January 12, 2009, Harris moved to reopen his case, and his motion was granted by Judge Leonard B. Sand on February 6, 2009. (ECF Nos. 6, 7.) Judge Sand directed Harris to file an amended complaint within sixty days of his order, which Harris did on March 31, 2009. (ECF No. 8.) Judge Loretta

3

A. Preska then granted Harris leave to file a second amended complaint on September 30, 2009, which Harris did on November 30, 2009.  (ECF Nos. 9, 10.)  The case was then reassigned to the undersigned, and Harris requested permission to file a third amended complaint to identify the Jane and John Does in his complaint.  (ECF No. 13.)  The Court granted him permission to do so, and he did on May 28, 2010.  (*See* ECF Nos. 13-15.)  On January 3, 2011, defendants brought this motion to dismiss the complaint.  Prior to the resolution of this motion, Harris requested appointed counsel on April 26, 2011.  (ECF No. 29.)  On May 4, 2011, Magistrate Judge Kevin Nathaniel Fox denied the application, finding that Harris's complaint lacked sufficient merit to warrant appointing counsel.  (ECF Nos. 29, 30.)

## DISCUSSION

### I. Standard of Review for Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  If the factual averments permit no reasonable inference stronger than the "mere possibility of misconduct," the complaint should be dismissed.  *Starr*, 592 F.3d at 321 (quoting *Iqbal*, 129 S. Ct. at 1950).  Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).  In applying this standard of facial plausibility, the Court takes all "factual allegations to be true and draw[s] all reasonable inferences in the plaintiff's favor. *Harris v. Mills*, 572 F.3d

66, 71 (2d Cir. 2009).  But the Court does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Iqbal*, 129 S. Ct. at 1949.

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Accordingly, "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotation marks and emphasis omitted).

## II. Judge Wood's February 4, 2008 Order

As an initial matter, defendants contend that plaintiff's complaint should be dismissed because he "did not file the third amended complaint until well after the 60 day time limitation established by Judge Wood."  (Def.'s Mem. at 5.)  But this ignores the procedural history of this case after that order, detailed above.  Numerous other court orders authorized Harris's first, second, and third amended complaints, and this argument is therefore unavailing.

## III. Failure To State a Claim

Harris's action arises under 42 U.S.C. § 1983 and alleges inadequate medical care.  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "The standard of deliberate indifference includes both subjective and objective components."  *Id.*  "Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted).  "[T]he subjective element of deliberate indifference 'entails something more than mere negligence . . . [but]

something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "[M]ere allegations of negligent malpractice do not state a claim of deliberate indifference," although "certain instances of medical malpractice may rise to the level of deliberate indifference; namely, when the malpractice involves culpable recklessness." *Id.*

Harris's claim fails to meet this standard. Assuming *arguendo* that the injury to his finger constitutes a sufficiently serious medical condition, the claim of deliberate indifference is based on: (1) Taylor's initial misdiagnosis of his finger injury; (2) Taylor's failure to provide him stronger pain medication; (3) Dr. McGill's surgery on the finger; (4) Nosworthy's disbursement of Tylenol instead of Vicodin; and (5) the failure to provide an overnight stay in the infirmary. None of these allegations, however, rise to the level of deliberate indifference. As for misdiagnosis, without more, "[a]llegations of negligent treatment and misdiagnosis do not state a cause of action under the Eighth Amendment." *Anderson v. Lapolt*, No. 9:07-CV-1184, 2009 WL 3232418, at *13 (N.D.N.Y. Oct. 1, 2009); *accord Burgess v. Cnty. of Rensselaer*, No. 1:03-CV-00652 (NPM-RFT), 2006 WL 3729750, at *8 (N.D.N.Y. Dec. 18, 2006) ("[A] claim of misdiagnosis, faulty judgment, or malpractice without more to indicate deliberate indifference, is not cognizable under section 1983."). The failure to provide stronger pain medication does not constitute deliberate indifference. *See Veloz v. New York*, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004) ("Differences in opinion by a doctor and a prisoner over the appropriate medication to be prescribed is a disagreement over a treatment plan and does not implicate the Eighth Amendment."); *Fernandez v. Fed. Bureau of Prisons*, No. 99 Civ. 4944 (VM), 2001 WL 913929, at *2-3 (S.D.N.Y. Aug. 13, 2001) (finding that when plaintiff based his claim on defendants' "(1) not choosing to follow the Aftercare Suggestions; (2) ignoring his pleas for

medical care for the pain he was experiencing; and (3) failing to provide him with adequate pain medication" that such pleadings "cannot satisfy both prongs for establishing deliberate indifference to his medical needs").  Harris's allegations regarding the quality of Dr. McGill's surgery, or of adverse consequences from the surgery also do not amount to plausible allegations of deliberate indifference.  *See Martinez v. Ravikumar*, 616 F. Supp. 2d 455, 459 (S.D.N.Y. 2009) ("Martinez does not allege that Ravikumar knew of and disregarded an excessive risk to her health and safety while conducting the surgery . . . .  Rather, she alleges that Ravikumar's treatment and diagnoses were not effective.  At most, Martinez alleges that Ravikumar was negligent in his performance of the surgery and subsequent examinations.  Such allegations do not give rise to a valid claim of medical mistreatment under the Eighth Amendment."); *see also Middleton v. Falk*, No. 9:06-CV-1461 (GTS/DRH), 2009 WL 666397, at *8 (N.D.N.Y. Mar. 10, 2009) ("Any adverse effects which Middleton suffered as a consequence of the surgery required to attempt to correct his serious retinal detachment are, at best, negligence.  As noted, negligence is insufficient to sustain a claim under the Eighth Amendment.").  Nor do Harris's allegations that Nosworthy gave him Tylenol instead of Vicodin show deliberate indifference; these allegations state only the bare fact that she took those actions, and give no reason to suspect that Nosworthy acted for reasons that would subject her to Eighth Amendment liability.  *See Ravenell v. Van der Steeg*, No. 05 Civ. 4042 (WHP), 2007 WL 765716, at *6 (S.D.N.Y. Mar. 14, 2007) ("That Magill disagreed with Foster does not transform Foster's conservative recommendation into cruel and unusual punishment.  The question of what diagnostic techniques and treatments should be administered to an inmate is a 'classic example of a matter for medical judgment'; accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide to their patients." (quoting *Estelle*, 429 U.S. at 107));

*McKenna v. Wright*, No. 01 Civ. 6571 (WK), 2002 WL 338375, at *8 (S.D.N.Y. Mar. 4, 2002) ("The mere fact that the defendant physicians may have made a different medical decision with respect to Plaintiff's treatment than that purportedly recommended by Dr. Maliakkal does not indicate that they acted for culpable reasons."). Finally, Harris's complaint cites only his disagreement with the medical judgment of the prison infirmary staff in being transferred from the infirmary to general population after his surgery as a reason to infer deliberate indifference from that decision. (*See* Compl. Attach. at 3 ("What baffles me is that I was placed in the infirmary the night before the surgery, but the actual day of the surgery when I returned, I was placed in general population.").) The complaint does not identify any details indicating deliberate indifference apart from plaintiff's own opinion that he was too sedated and groggy to be placed in general population. But the case law is clear that plaintiff's mere disagreement with the medical judgment of the prison's medical staff, even if it amounts to negligence on the staff's part, does not amount to a constitutional violation. *See, e.g.*, *Berry v. Wright*, No. 04-CV-0074 (SR), 2011 WL 231626, at *4 (W.D.N.Y. Jan. 24, 2011) ("While plaintiff may disagree with the decisions made by the defendants in their treatment of him, it is well-settled that an issue of medical judgment is 'precisely the sort of issue that cannot form the basis of a deliberate indifference claim.'" (quoting *Hernandez v. Keane*, 341 F.3d 137, 147 (2d Cir. 2003))); *see also Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. . . . Moreover, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim.").

Accordingly, Harris has failed to plead a constitutional violation in his complaint. As Harris has already amended his complaint three times after being informed of the deficiencies in his original complaint by Judge Wood, dismissal with prejudice is appropriate at this stage of the

litigation. *See, e.g.*, *Denny v. Barber,* 576 F.2d 465, 471 (2d Cir. 1978) (plaintiff was not entitled to "a third go-around"); *Treppel v. Biovail Corp.*, No. 03 Civ. 3002 (PKL), 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005) ("[T]he Court finds that leave to amend would be futile because plaintiff has already had two bites at the apple and they have proven fruitless.").

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss **[22]** is GRANTED and the action is dismissed with prejudice. The Clerk of the Court is requested to close this case.

SO ORDERED.

Dated: New York, New York
      July **6**, 2011

_____
Richard J. Holwell
United States District Judge